I would like to reserve five minutes of my time for reply. Manager, on time. Thank you. In this case, the government concedes that there has been a storage, I'm sorry, that there has been a disposal. However, the government argues that five particular tanks on the property were stored and thus the basis for their conviction. The date of the storage that they allege is occurred three months after the property had been abandoned. The tenant had been evicted and had not attended at the premises thereafter. Which property had been abandoned, the closed containers? The site itself, the plant, and in the plant were the containers. And that's where they were being stored? They were there until they left the premises. And thereafter they were no longer stored. Once something is left somewhere, it is either in terms of a particular state, it either is stored or it's disposed. The question is, were those five tanks disposed? So who was in custody of the five tanks after your client left? The landlord was. So they were in the custody of the landlord. The landlord was then in effect storing them, wasn't he? No. The question is whether the tanks were stored. The proposition you're suggesting is that they are stored. And the proposition that Appellant is arguing is by definition those were abandoned. And when you look at the definition of what storage is and what disposal is, these five tanks were disposed of because they contained a danger to the public by their nature. Well, I think first, I mean, when you look at the indictment, I think since your client was charged, he could have either been like a principal or aider and abetter or something. You're on notice of all of that. But the language that you're citing, it seems to be that there's some case law that supports the fact you can't be convicted of both, say like, I mean, we would say it commonly in California, a burglary and receiving stolen property. It doesn't say that you can't be charged with both. It's just if you're convicted of both, then one ends up being stricken. And it's sort of a double jeopardy argument that's being made. But here, a person can really be guilty of both. They can't necessarily be sentenced to both. I mean. With respect, that's not what the Ninth Circuit said in Humphreys. Well, I'm not so sure that your reading of Humphreys is exactly correct. Once you dispose of something, and just in normal common sense, once you dispose of something, you're no longer storing it. It's a different concept. And the definitions provide different concepts as well. So once you've disposed of something, you can't be later said to have been storaged. So let's say, for example, that your client had hired a storage unit to put these containers, okay? And then stopped paying the vendor for the unit. Then does that say it's no longer stored? Well, it depends on the nature of the storage. If the storage is such that causes a potential danger to the environment, which is the definition of what a disposal is, and that's defined in the code itself, 6903, placing on land. So even the effect of your suggestion of putting in a storage, if that storage constitutes a danger that may enter the environment or be emitted into air, then that is a disposal. So if it's put in a protected storage site, as you suggest, by a vendor who properly stores, then it is storage. Right, but then they stop paying. But even if they stop paying, the storage doesn't change by its nature. So what's the difference between my example and the one that Judge Carmen pointed out, that now you have the storage in the hands of the landlord? Well, except the landlord's not. The premises are abandoned. The landlord's not there. The premises are not abandoned. The landlord was taking an express interest in what was going on in those premises from day one. He even got you to enter into a consent decree to clean it up. Yes. You caused him to become the storer of closed containers that were not leaking, and within, what, 90 days of your departure, the environmental agencies come in and take care of it. The point is that those were not stored. Even when the landlord had possession of the property, it was an open site. The report stated the dangers of an abandoned site and the dangers of a site not being fenced out. Well, this was in a closed, what the building was. It was in an enclosed building. Correct. But there was access through the building, through windows, through doors, vandalized. Anything could have happened. And that was the biggest concern in Syme's report, that he says So by your view, it's the same thing as if it was left in a forest. Yes. And I used the example in the brief of how would that be any different, that if you took those five tanks that are sealed and put them in the forest, are you now still using the forest? No, you've basically abandoned it. I know, but there's a much greater risk there than there is if you leave them in an enclosed building. That's being, in which the owner is obviously taking an interest in dealing with the problem. The owner indeed took an interest in dealing with the property cleanup, but by the witness that testified when he came to the site, in fact, the site was found by a fire inspector, an L.A. fire inspector, who came across the property, saw this, and called the FBI. So he was able to go in and see. I don't know if the facts were that he went in the building, but the building was accessible. You think he climbed through a window? I don't know. You think the FBI agent climbed through a window? No, he didn't climb through a window, but he did access the property. It wasn't fenced. It wasn't locked. It was open to the public basically, especially vandals who do, as he testified in his report, that it's a vandalism that provides the danger. So under your theory, your client was basically guilty of storing that stuff. Correct. Disposing the stuff. Well, no. He left it in that building up until the point. He didn't dispose of it, not as I see it by the definition of what constitutes it. He stored it until March 20th. Right. Which is not what he was charged with. Well, but he stored it at least until then, and then he stopped storing it when he ran away. Stopped paying rent when he was there. Right, and when he was there storing it, he was there controlling the property. He could see it, whether he was there or someone was there. But when he left the property, there was nobody there. The landlord didn't go in, fence the site off, do whatever is necessary to keep those tanks from being accessed. But I'm still not, even if we accept your argument that disposal and storage are mutually exclusive, isn't Mr. Roach liable under 18 U.S.C. Section 2B as a principle for illegally storing the waste? And I think that's noticed in the indictment, right? Yes, but that was originally, that was for storage prior to the date of the alleged charge. The date of the alleged charge, he had not been storing them. Well, but on the date of the alleged charge, he left them, and it was being stored by the owners of the building, and he caused them to store it. If it was being stored before, it was still being stored in the same place, and he caused the owner of those buildings to continue the storage briefly until it was cleaned up. I accept that proposition, except that I say that the definition of storage, he never, once they left, they were no longer stored. And so the landlord is not storing them, just because they were transferred to the landlord. So the day before he was evicted for nonpayment of rent, they were being stored. They were stored there. And the day he left, they were no longer being stored there. They were actually abandoned before they, because they weren't at the premises doing the cleanup. But that's a prior date.  Very good. Thank you. Good morning, Your Honors. May it please the Court. Heather Gorman on behalf of the United States. Did you draw the indictment in this case? I'm sorry, Your Honor? Did you write the indictment? I did not write the indictment, Your Honor. I inherited the case and was the trial attorney. So now it's being stored with you. It would seem that way, Your Honor. It was abandoned. I'm just curious as to why the charge was limited to the point in time after he was evicted or abandoned. Your Honor, because I wasn't involved in charging the defendant in this case and in the indictment, I can't speak with 100% clarity. I could speculate as to why the AUSA may have done that. I haven't even had an opportunity to. But you could have sought a superseding indictment, right? Your Honor, by the time I received this case and this was assigned to me, the statute of limitations had run. So there was no opportunity for me to supersede. Is it your position that the statement in U.S. v. Humphreys that under RCRA, disposal and storage are mutually exclusive, that a person cannot be convicted of storing waste once the person has disposed of it, is non-binding dicta? Or if so, what leads you to that conclusion? Your Honor, I don't think that it's dicta. In fact, I believe that the court in that case held that, well, let me take that back. I apologize. That statement is dicta. I believe the holding was that the disposal begins with the act of disposal. So yes, to answer Your Honor's question, that is dicta. But I don't think that… Wasn't it also the fact, wasn't the court in that? As I read that court statement, the court was speaking generically. That is, it's not possible to store something that you've already disposed of. And I don't read that as necessarily using those words in reference to the more technical statutory language. It's obvious that you can't store something that you've gotten rid of. And I think that's what the court was saying, and they weren't using those words in its most technical sense. I would agree with that statement, Your Honor. And I don't think that that statement in any way undermines the government's case or the government's position here. I don't disagree that the same unit of hazardous waste at a given point in time can be both stored and disposed of. But can you charge people with both? And then if they're convicted of both, then what happens is they can't be punished for both, and one's stricken. Your Honor, my understanding of how this would work is that for a particular unit of hazardous waste, you may charge storage and disposal at different times. For example, in a drum of hazardous waste, it may be stored at time zero, and to the extent that the container is compromised or something happens and it leaks all over the floor and spills into the ground, it would then be disposed. Those are two different times. Similarly, I believe that if you had a tank or a container of hazardous waste and some of it was remaining in the container while another portion of it had spilled out— But let's say you don't really know as a prosecutor exactly whether it's stored or disposed. Can you charge both and then deal with it later after the jury comes back with a verdict? Or can you not charge both for the same set of facts? I am unaware, Your Honor, of any case where we have charged both for the same unit of hazardous waste at the same time. Whether that's possible or feasible, I haven't— Well, I'm wondering—I'm talking not possible, feasible. Legal is what—we're talking legal here. Yes, Your Honor. I would not charge the case in that way. I wouldn't charge a case where I don't— Well, you're still dancing around my question. Can you legally be charged with both? I think you legally can't be maybe convicted of both or sentenced on both, but can you legally charge both? Your Honor, I do not believe you can be legally charged with storing and disposing of the same unit of hazardous waste at the same moment in time. So let's go back to my hypothetical where the person rents a storage unit, puts some hazardous waste there, stops paying. Of what section is that person guilty of? So to the—and Your Honor, just to clarify— It's not leaking. Right. To clarify, both storage and disposal are contained in the exact same paragraph of the RCRA statute. Yes. To the extent that there is containers of hazardous waste stored in a location and then the— Abandoned. The land—the operator leaves, to the—if that is not being—leaking, spilling, or anything, I would consider that storage. The defendant seems to make an issue of the fact that he abandoned the site, that he was not entitled to be there because he was evicted and therefore he disposed of it. Abandonment does not—there's nothing in the statutory definition of disposal that speaks of abandonment. Whether somebody walks away from something doesn't convert something that was otherwise stored into disposal. In fact, the only place in the regulatory or statutory framework under RCRA that I'm aware of that speaks of abandonment is in the definition of solid waste. Well, do you go—do you put the language in the indictment about 18 U.S.C. Section 2B as a principle? Yes. If we—this case was charged under a causing theory, and at trial we pursued the charges under a causing theory, that the defendant had caused the landlord, essentially, to store it. And by causing the landlord to store the hazardous waste was therefore liable as principle. So a landlord could—a landlord and someone that caused them to do it could both be storing, but the landlord here called you and said, hey, do something. That's correct, Your Honor. And in this particular case, it would seem unjust to charge an innocent landowner who didn't have any control over these in storing or developing the hazardous waste. To the point that the landlord has knowledge that it's there and continues to store it, the landlord could legally be charged. That's correct, Your Honor. And in this case, there was testimony at trial that the landlord was aware and had worked repeatedly over a course of years with the defendant and the co-defendant in this case to try to remove the hazardous waste, have it cleaned up, and have the entire shop allow them to continue operating, but without the risk that all of the hazardous waste on site would present to the public and to the environment. Unless Your Honors have any further questions for me, I would submit. Any further questions? Okay. Thank you very much. Thank you. I just want to address Chief Justice Thomas' concern or question regarding the if you place the storage in a storage place and then fail to pay rent, would you thereby be abandoning? And I think the error is that you have to look at where you put that storage. If you put that storage in a place that results in a definition of disposal, then you haven't stored it at the proper premises. If I put this storage at U-Haul, if U-Haul is a place on land that may constitute an entering environment into the air discharge, then it by itself is a disposal. The statute you're relying on says to place into or on any land or water. On any land. On any land. It doesn't talk about building. It talks about land. And it seems to me that it's obvious the concern is that if it starts leaking on land, it poses a clear and serious threat that it would get into the air or in the water. Well, I would submit that it wouldn't matter whether it's in land or in a storage. The issue is will it be in danger to the site? Well, but the statute says land or water. Right. On any land. On any land. So any building now is any land. I would submit it would include that, that the definition of land wouldn't restrict it. If you put a dangerous tank in a building to be arguing the opposite, that wasn't placing on land, I would submit that that argument would not sustain. The theory of the disposal definition is that this container is a danger to may, and that's where the word may, not does, like the government's saying. These did not leak, so therefore they are stored. The submission is that even— Well, what is may? A one in a thousand chance or much more likely to happen? The expert testifies— Theoretically, it could be possible in any number of places that it may. You posit an example of somebody lighting a place on fire. Well, I mean, there are very few places that are fireproof. Yes, and that is a concern that the EPA raises when it uses these examples of what is a danger to the environment. A sealed tank is a danger to the environment because someone can get in and light the place on fire. So there's no such thing as storage, then, because anything—it could happen anyplace when you're just suggesting. Well, that's— I mean, what's left of it? The storage is—there are proper storage. There's proper methods of storage. I mean, you conceded in your original argument that before your clients left, they were storing it. Perhaps, but in any event, the point is that once—that I was addressing is it's not the failure to pay rent that created whether or not the definition became a storage. It's the fact of what it is by its own definition. I'm not sure I understand the distinction, then, based in this situation. In other words, you left the tanks that were fully sealed on the property. By my analogy, if they stopped paying, I thought you were going to say they had abandoned and, therefore, disposed of it. Well, you seem to be saying it's stored. So— No, I'm not saying it's stored. I'm saying—and, in fact, you are entitled to store. You are entitled to have that waste on your premises for a certain period of time. You're given 90 days under the Act to remove it. So something could be— But you said in your original—in your opening argument, you agreed that your clients were storing it, these sealed containers, before they left. I don't see how they were any less stored after they left. Well, they were in control and in observation. They were. I don't know what that control means because the government picked out the five containers that were actually sealed, but there were a number of other containers that were leaking, none of which had apparently gotten into the ground. Right. And if the charge of disposal was made on my client in this case—and he's not saying he didn't commit an offense. The offense he committed was disposal, improper disposal. He never committed an improper storage because the time that he was storing, if you say that I've conceded that, the time that he was storing, he— Everything's been recorded. I understand. But he's—no, I'm not saying I didn't say that. I'm saying that even if he did store it, he is—there is permission for storage in your own place for certain periods of time. And after a certain— Well, there was more than 90 days that this was stored, wasn't it? Well, it's a date of creation, so I don't know if this was over 90 days. Perhaps it was. I'm saying that's not the issue. The issue is what happened when they left the premises. When I rent an apartment and— It seems to me they weren't doing—nothing much changed when they left the premises because these things—looking at what was going on overall, all of these leaking containers, they weren't doing very much to prevent this stuff from leaking and under your attenuated theory from getting into the ground. I'm not out here saying that my client is not guilty of disposal. What I'm saying is he's not guilty of what the government charged him with because of the nature of the definition. You're arguing he should have been charged with the more serious events. Perhaps, yes. But I'm defending what he was charged with in the indictment and what he charged in the indictment does not match the facts. And in the final proposition, I'd say if I lived in a premise, which I did before in another city, and I left my couch because I couldn't fit in the truck, I left it there. Now, I'm not storing that couch that I left behind in that city five years ago because I never went back and got it. I know, but you're causing the landlord to store it. If I understand the theory of what the government was doing, it picked out five containers that were sealed among a number of, I don't know, 50, 100, dozens that were leaking. And under their view, they were being stored in the containers and the containers were being stored in turn in this building. And you essentially caused the owner of the building to store it for, it may have been only 90 days. I haven't done the exact calculation. I understand your point. I'm just saying that at the time of the abandonment, when the landlords, when the tenants abandoned those containers, they were changed. They were now disposed of. The theory, if they were charged with the reverse of this, if they had been charged with disposal of those five containers, would he be acquitted of disposal because he didn't dispose of them? He stored them? That's the ultimate question. If you reverse that and say he is here charged with a disposal of five containers. The government must have thought so because they carved this out in the way they did. They could have easily charged disposal, but they took the five containers that were actually sealed and were now leaking. And they picked that out to charge storage or causing to be stored. Well, I think they picked that out at trial when they realized, when we raised the argument, when we realized that, because their view was the whole thing was stored. Even the open containers were stored. I don't think there was any thought when they decided, okay, we're picking out these five containers. It was only in evidence that the government pointed. Or maybe they said, look, we've got these containers. We don't know when they started leaking. And it could be the landlord's fault, so we're just going to charge storage. We're not going to charge the leaking because we don't know when they started leaking. I mean, that's another plausible theory. And whatever the reason is in terms of the defense doesn't matter. The question is, is the charge proper? Can the charge be sustained? And I'm saying if you reversed it and charged with disposal, would we have been able to obtain an acquittal on the disposal charge? Because we would say, no, he didn't dispose of it. The government would be here arguing for it today. And so would the witnesses that testified. Well, but if they tried the same, if we reversed it, saying there wasn't sufficient evidence to support it, they can't retry those same set of facts. That's called double jeopardy. Well, maybe the statute barred it anyways. I mean, if it was a matter of a reversal and then they just supersede or recharge on disposal, then, yes, we'd be wasting everybody's time because he would be guilty of that. Well, they also wouldn't, as a practical matter, your client deserved a sentence, so they wouldn't bother, I suspect, with another prosecution. He's getting out June 16th or something? He's here today. Oh, he's here. He's in a halfway house, and he has an additional nine months of home detention as part of his supervision. I'm not suggesting the case is moot. No, no. I'm just suggesting it's a felony conviction. No, no, no. All I'm saying is that a prosecutor in a circumstance where the defendant has served what most people regard as his entire sentence, notwithstanding the other aspects of it that they'll make it moot, would not bother to re-prosecute. The nature of the defense is that there is a technical, and I suggested it being a faux pas in terms of the indictment being ill-written, but that doesn't change the fact that at the time of the offense, as alleged, it was not a storage. It was a disposal. And by the law and definitions, whether you accept Humphreys for what it stated or whether you don't, if you look just pure at the definitions, the definition of storage, and that's the point. You practically can't be storing something that you've supposedly. Well, I think I understand your argument. Well, and our questions have taken you over time. Thank you for your argument. Thank you both for your arguments this morning. The case is just arguably submitted for decision.
judges: Korman, Thomas, Callahan